UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 22-14959-LMI

PHIRIK INVESTMENT GROUP, LLC  CASE NO.: 22-14959-LMI
a Nevis Limited Liability Company,  CHAPTER 11
ERIK GAUTIER, an individual,

    Plaintiffs,  Adv. No.

v.

ISAAC HALWANI, an individual, and
GISELLE HALWANI, an individual

    Defendants.

_____/

## COMPLAINT

**Non-dischargeability of debt pursuant to 11 USC § 523(a)(2)**

Plaintiffs, Phirik Investment Group, LLC ("Phirik"), Erik Gautier ("Erik"), (collectively "Plaintiffs") by and through their undersigned counsel, bring this adversary proceedings against Defendants Isaac Halwani ("Isaac") and Giselle Halwani ("Giselle") (collectively "Defendants") pursuant to 11 USC § 523(a)(2)(A) and (B), and seek an order determining that the debts owed to them by Isaac and Giselle are excepted from discharge.

### PARTIES, JURISDICTION AND VENUE

1. On June 26, 2022, Isaac and Giselle commenced this case by filing a voluntary chapter 11 petition (the "Petition Date").

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. § 523. This is an adversary proceeding pursuant to F.R.B.P. 7002.

3. Venue in the Southern District of Florida is proper under 28 U.S.C. § 1409(a).

4.Plaintiff Phirik is a foreign Limited Liability Company incorporated under the laws of the Island of Nevis with its registered office at Hunkins Waterfront Plaza, Suite 556, Main Street, Charlestown, Nevis, West Indies, and with its principal place of business at 656 W. Palm Aire Drive, Pompano Beach, Florida 33069.

5.Plaintiff Erik is an individual residing in Venezuela and is *sui juris.*

6.Defendant Isaac is an individual residing in Miami-Dade County, Florida, and is a debtor in the above-referenced chapter 11 case.

7.Defendant Giselle is an individual residing in Miami-Dade County, Florida, and is a debtor in the above-referenced chapter 11 case.   Giselle is Isaac's wife.

## GENERAL ALLEGATIONS

*The Halwanis Undertake A Plan To Defraud*

8.In late 2018, Isaac told Erik about some ventures that Isaac was undertaking in the food industry using an entity that Isaac owned and controlled named Frozen Wheels, LLC ("Frozen Wheels").

9.Isaac, individually and as representative of Frozen Wheels, asked Erik to loan them monies to fund the food business (the "Food Venture").

10.Isaac, along with his wife Giselle (collectively "the Halwanis"), had an elaborate scheme: to initially make this a appear to be a profitable venture in order to gain Erik's trust, and to continue receiving millions of dollars from him to ultimately use the funds for their own personal use and benefit.

11.In furtherance of this scheme, the Halwanis misrepresented certain facts to Erik in order to induce Erik to transfer funds to the Halwanis.  Specifically, they represented to Erik that (i) all funds invested by Erik would be used for the sole purpose of financing the Projects; (ii) that

2

the Food Venture would be profitable; (iii) the Halwanis would return the principal loaned by Erik along with all interest accrued at the rate of 25% per annum; and (iv) the Halwanis would make principal and interest payments on the 20th of each month, starting on January 20, 2019.

12. Isaac made the above representations over the course of various phone calls and meetings with Erik, where Giselle was present and acquiesced to everything that Isaac said. The phone calls occurred while Erik was in Florida, and the meetings took place in Miami, Florida. When in person, the misrepresentations were made in Isaac's office 16565 NW 15th Avenue, Miami, Florida, 33169, in restaurants, at the Halwanis' house and even on the Halwanis' boat. Specifically, Isaac would say that the Food Ventures were a very secure business because people can stop dressing with new clothes, but people can never stop eating.

13. These representations, however, were false when made, because the Halwanis' objective was to ultimately defraud Erik, and ultimately Phirik.

14. Relying on Isaac's and Giselle's misrepresentations, Erik transferred $3,000,000.00 to Isaac.

15. After reinvesting some of the profits in the Food Venture consistent with their scheme, Isaac and Giselle asked Erik to increase the amount of the promissory note under the false pretenses that (1) the funds would only be used for the Food Venture; (2) principal would be returned with interest; (3) interest payments would start to be paid shortly.

16. Based on these representations and given that the Halwanis had reinvested some profits in the Food Venture, Erik agreed to increase the amount lent to $5,000,000.00. A copy of the May 3, 2019 Promissory Note is attached as Exhibit 1.

17. In early 2020, however, the Halwanis' scheme came to a hard stop when the COVID-19 Pandemic wreak havoc with the world. All industries, including the food industry,

were shut down and there was no longer a possible Food Venture. Accordingly, Isaac and Giselle changed gears to the personal protective equipment ("PPE") business.

18. Isaac, individually and as representative of Frozen Wheels, asked Erik to loan them monies to fund the PPE deals. The Halwanis promised that this was a solid business and would be profitable, and that the same loan terms would apply: (i) all funds invested by Erik would be used for the sole purpose of financing the PPE deals; (ii) the Halwanis would return the principal loaned by Erik along with all interest accrued at the rate of 25% per annum; and (iii) the Halwanis would make principal and interest payments right away.

19. Specifically, Isaac would call Erik individually and as owner of Phirik to make all these false assurances. On one occasion Isaac told Eric that Isaac had a contract with the State of Maryland and other important clients, and that the PPE business was safe and profitable. Isaac represented to Eric that initially Isaac sold masks, but that Isaac having success selling nitrile gloves that Isaac would bring from Thailand, specifically from a company called Sri Trang.

20. In furtherance of his fraudulent scheme, Isaac sent Erik an email purported to be from the State of Maryland, and also sent bills of lading of the products- which ultimately "disappeared". Meetings were also held at the Halwanis house, restaurants and the Halwanis' boat, where Isaac, with Giselle's approval, made these false representations. Usually, Isaac, Giselle, along with Isaac's partner Rany Zantout, Erik and Victoria, participated in the meetings.

21. Erik, acting in reliance on Isaac's representations, agreed to provide the funds to Isaac. Subsequently, Erik assigned his rights to Phirik. Phirik is a corporation created by the Gautier family (Erik and Philippe) to conduct business with Isaac.

22. Phirik, as lender, and Isaac, as borrower, then entered into a written agreement to document the loan for the PPE business and the prior loans for the Food Venture. *See* Amended

4

and Restated Revolving Line of Credit Agreement of April 13, 2021 (the "LOC"), attached as Exhibit 2, and Second Amended and Restated Portfolio Interest Revolving Line of Credit Promissory Note of April 13, 2021 (the "Note") attached as Exhibit 3.

23. The Halwanis, however, had no intent to repay any funds and knew they lacked the ability to repay the funds because the Halwanis were heavily in debt, in default on other obligations and being sued and threatened with suit.

*The Halwanis Default Under The Loan Documents In Furtherance Of Their Scheme To Defraud*

24. According to the LOC and Note[1], Isaac could borrow up to Twelve Million Dollars ($12,000,000.00) from the Lender, which Isaac promised to pay back pursuant to the terms of the Note. *See* generally Exhibits 2 and 3.

25. Regardless of the amounts borrowed by Isaac, the entire outstanding principal balance under the LOC and the Note are due and payable on April 13, 2023. *See* Exh. 2 at ¶ 2(a) and Exh. 3 at ¶ 2. The interest and all sums advanced, at a 25% rate per annum, is due and payable on the 20th day of each month commencing on April 20, 2021. *See* Exh. 2 at ¶ 1(a) and (b); Exh. 3 at ¶ 4(a) and (b).

26. Isaac, Giselle, Frozen Wheels, and YL Group each signed a Guaranty Agreement (the "Guarantees") whereby each one of them irrevocably and unconditionally guaranteed the full and prompt payment and performance of all obligations of the Borrower. *See* Guarantees, attached as Composite Exhibit 4 at 3(a).[2]

---

[1] The Note amends and restates that certain promissory note dated January 1, 2019, in the original principal amount of $3,000,000.00 given by Frozen Wheels and Isaac Halwani, jointly and severally as Borrower in favor of Gautier and assigned by Gautier to Phirik as Lender, on April 25, 2019 (the "Original Note"), as amended by that certain Amended And Restated Portfolio Interest Revolving Line Of Credit Promissory Note dated May 3, 2019, in the original principal amount of $5,000,000.00 given by Borrower in favor of Lender (the "First Amended Note").

[2] The Guarantees were signed on May 3, 2019.

27. The Guarantees are continuing guaranties under which the guarantors agreed to guarantee the full payment, performance, and satisfaction of the debt existing at the time of the guaranty or thereafter arising.[3]

28. The Guarantees are Guarantees of payment and not of collection.

29. Phirik is the owner and holder of the LOC, and the Note together with the Guarantees (collectively the "Loan Documents").

30. Isaac has defaulted under the Loan Documents.

31. Isaac, Giselle, Frozen Wheels and YL Group also defaulted under the Guarantees.

32. As a result, an Event of Default exists under the terms and conditions of the LOC and the Note.

*Isaac Issued Several Worthless Checks*

> **Commented [MCG1]:** If we don't have counts as to this, why do we need to include it? Should we be adding a civil theft count here for the checks?

33. In perpetuation of the fraudulent scheme, between September 20, 2020 and May 6, 2022, Isaac issued eight (8) checks to the Plaintiffs and their affiliates and insiders through several companies owned and controlled by Isaac totaling $ 775,902.50.

34. All eight (8) of the checks issued by Isaac were returned for insufficient funds. When confronted by Plaintiffs, Isaac would always come up with an excuse. For example, once Isaac represented to Eric that Isaac made a mistake on the date of the check. Another time Isaac represented to Eric that an automatic payment had been charged to his account and had left him with barely enough funds.

---

[3] The Guarantees absolutely, irrevocably and unconditionally guarantee (as primary obligor and not merely as surety) to Lender, the full and prompt payment and performance of all principal, interest, reasonable attorneys' fees, liabilities for costs and expenses and other indebtedness, obligations and liabilities of Borrower to Lender at any time created or arising in connection with the First Amended Note, or any amendment, extension, renewal or modification thereto or substitution thereafter. *See* Exh. 4 at 3(a).

35. Plaintiffs sent the statutory demand letter to the maker of the checks as required under section 68.065, Florida Statutes. However, none of the entities controlled by Isaac have complied with the demand.

***The False PNC Documents***

36. In accordance with the provisions of the LOC and Note, as of June 23, 2022, the amounts due, are: $12,000,000.00 in principal and $3,000,000.00 in interest.

37. The LOC, Note, and Guarantees, all include attorneys' fees provisions which state that the Isaac agrees to pay all costs incurred by Phirik in enforcing any rights and remedies under the Loan Documents, incurred by reason of the default, including reasonable attorney's fees and costs. *See* Exh. 2 at ¶ 4; *see* Exh. 3" at ¶ 8; each of the documents in Exh. 4, at ¶ 10.

38. In furtherance of the fraudulent scheme and in order to induce Phirik from forbearing on the exercise of its rights, Isaac provided Erik and Phirik a letter from PNC dated August 5, 2021, purporting to show that his company Frozen Wheels LLC had a balance of $16,137,858.26 in its bank account. *See* Aug. 5, 2021 letter attached as Exhibit 5.

39. Isaac issued Erik the August 5, 2021 letter from PNC knowing it was false and in order to induce Erik and Phirik from forbearing from exercising their rights under the LOC and Note.

40. Additionally, on April 4, 2022, Isaac sent Phirik a false document that purported to show a $15,982,000.00 wire transfer to cancel his debt with Phirik. *See* true and correct copies of the April 4, 2022, wire transfer documents attached as Exhibit 6.

41. When the April 4th wire never arrived, Isaac represented to Erik that PNC had stolen the monies.

42. Isaac issued Erik the April 5, 2022 wire transfer documents knowing they were false and in order to induce Erik and Phirik from forbearing from exercising their rights under the LOC and Note.

**COUNT I – NONDISCHARGEABILIITY 11 U.S.C. § 523(a)(2)(A)**
**(against Isaac and Giselle)**

43. Plaintiffs Erik and Phirik reallege and incorporate the allegations of paragraphs 1 through 42 as though fully set forth herein.

44. Defendants Isaac and Giselle obtained money, renewal, and extensions of credit by false pretenses, by false representations and/or by actual fraud within the definition of non-dischargeability of debts contained in 11 U.S.C. § 523(a)(2)(A).

45. In connection with the January 1, 2019 Promissory Note, the May 3, 2019 Promissory Note, and the April 13, 2021 LOC and Note, Isaac and Giselle represented to Erik individually and as representative of Phirik, that: (i) all funds invested by Erik/Phirik would be used for the sole purpose of financing the Projects; (ii) Isaac would return the principal loaned by Erik/Phirik along with all interest accrued at the rate of 25% per annum; and (iii) Isaac would make principal and interest payments on the 20th of each month. Further, Giselle represented to Erik that she would guarantee the full and prompt payment and performance of all obligations of Isaac.

46. Isaac and Giselle knew these representations were false when they made them and made the representations knowing they were going to use the funds for their personal benefit and use.

47. Isaac and Giselle intended that Erik and Phirik rely on the false representations.

48. Erik and Phirik relied on Isaac and Giselle's false representations and entered into the January 1, 2019 Promissory Note, the May 3, 2019 Promissory Note, the LOC and Note, and provided the Halwanis with the funds.

49. As a direct and proximate result of Isaac and Giselle's false representations, Erik and Phirik suffered damages.

WHEREFORE, Plaintiffs Erik and Phirik respectfully request a judgment be entered against Isaac and Giselle, determining the amounts due to Plaintiffs are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), and any other relief this Court deems just and appropriate.

**COUNT II – NONDISCHARGEABILIITY 11 U.S.C. § 523(a)(2)(B)**
**(against Isaac and Giselle)**

50. Plaintiffs Erik and Phirik reallege and incorporate the allegations of paragraphs 1 through 42 as though fully set forth herein.

51. In furtherance of the fraudulent scheme and in order to induce Phirik from forbearing on the exercise of its rights, Isaac provided Erik and Phirik a letter from PNC dated August 5, 2021, purporting to show that his company Frozen Wheels LLC had a balance of $16,137,858.26 in its bank account. Exh. "F."

52. Between September 20, 2020 and May 6, 2022, Isaac issued eight (8) checks to the Plaintiffs and their affiliates and insiders through several companies owned and controlled by Isaac totaling $ 775,902.50.

53. Additionally, on April 4, 2022, Isaac sent Phirik a false document purporting to show a $15,982,000.00 wire transfer to cancel his debt with Phirik. Exh. 6

54. When the April 4th wire never arrived, Isaac represented to Eric that PNC had stolen the monies.

55. The August 5, 2021 letter and the April 4, 2022 wire confirmation documents are materially false.

56. The August 5, 2021 letter and the April 4, 2022 wire confirmation documents concerned Isaac's financial or one of his entities' financial condition.

9

57. Isaac published the August 5, 2021 letter and the April 4, 2022 wire confirmation documents with the intent to deceive Erik and Phirik.

58. In reasonable reliance upon the August 5, 2021 letter and the April 4, 2022 wire confirmation documents published by Isaac, Erik and Phirik forbore from exercising rights under the loan documents.

59. As a direct and proximate result of Isaac's false representations, Erik and Phirik suffered damages.

WHEREFORE, Plaintiffs Eric and Phirik respectfully request a judgment be entered against Isaac, determining the amounts due to Plaintiffs are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B) and any other relief this Court deems just and appropriate.

**COUNT III – CONSPIRACY TO COMMIT FRAUD**
**(against Isaac and Giselle)**

60. Plaintiffs Erik and Phirik reallege and incorporates the allegations of paragraphs 1 through 42 as though fully set forth herein.

61. Isaac agreed and conspired with Giselle to commit the unlawful fraud.

62. Isaac and Giselle engaged in overt acts to further the conspiracy.

63. Erik and Phirik incurred damages as a direct and proximate result of Isaac and Giselle's conspiracy.

WHEREFORE, Plaintiff Erik and Phirik respectfully request a judgment be entered against Isaac and Giselle, determining that their obligations to Erik and Phirik are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and such other relief this Court deems just and appropriate.

Dated:  September 27, 2022               DIAZ REUS & TARG, LLP
                                         100 Southeast Second Street
                                         3400 Miami Tower
                                         Miami, Florida 33131
                                         Telephone (305) 375-9220

By: */s/ Marta Colomar*
Michael Diaz, Jr., (Florida Bar No. 606774)
Attorney Email: mdiaz@diazreus.com
Marta Colomar (Florida. Bar No. 40869)
Attorney Email: mcolomar@diazreus.com
Evan Stroman (Florida. Bar No. 118929)
Attorney Email: estroman@diazreus.com
Nicholas B. Bangos (Florida Bar No. 0834238)
*Counsel for Plaintiff Phirik Investment Group LLC*

11